**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| MAGELLAN AEROSPACE, MIDDLETOWN, | : | Case No. 26-11937 |
| INC., | : | |
| | : | |
| Debtor. | : | Honorable Beth A. Buchanan |

**DEBTOR'S MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS**
**(I) AUTHORIZING DEBTOR TO OBTAIN POST-PETITION FINANCING PURSUANT**
**TO 11 U.S.C. §§ 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), AND 364(e);**
**(II) SCHEDULING A FINAL HEARING ON THE MOTION PURSUANT TO**
**BANKRUPTCY RULE 4001, AND (III) GRANTING RELATED RELIEF**[1]

Magellan Aerospace, Middletown, Inc. (the "**Debtor**"), as debtor-in-possession in the above-referenced Chapter 11 case, respectfully submits this motion (the "**Motion**") for the entry of interim and final orders (the "**DIP Orders**"),[2] with the interim order, substantially in the form attached hereto as Exhibit A (the "**Interim Order**"), (a) approving and authorizing, on an interim basis, the Debtor to (i) obtain post-petition debtor-in-possession financing from its existing pre-petition unsecured lender and parent, Magellan Aerospace USA, Inc. ("**Magellan USA**") (the "**DIP Loan**"); (ii) execute and deliver DIP Documents that conform with the terms outlined in the Debtor-in-Possession Loan Term Sheet attached as Exhibit B hereto (the "**DIP Term Sheet**"), including such other documents agreements, filings and instruments required by Magellan USA in its discretion in connection with such debtor-in-possession financing (collectively, the "**DIP Documents**"), (b) approving, on an interim basis, the terms and conditions of the DIP Loan, including, but not limited to, (i) authorizing the Debtor to borrow under the DIP Loan an initial amount of up to $2,000,000 and further, pending a final hearing on this Motion, (ii) authorizing

---

[1] Capitalized terms used but not defined herein shall have the meanings given to such terms in the DIP Term Sheet or in the Interim Order, each as defined herein, as applicable.

[2] The Debtor intends to file the form of Final Order prior to the Final Hearing (as defined herein).

the additional terms outlined in Exhibit B and any interim or final Order on this Motion, (iii) scheduling a final hearing (the "**Final Hearing**") on this Motion after expiration of the fourteen (14) day period required by Bankruptcy Rule 4001, (iv) approving the form and manner and notice of the Final Hearing to consider entry of a final order granting the relief sought herein on a permanent basis, and (c) granting related relief; and with the final order (the "**Final Order**") (a) approving, on a final basis after the Final Hearing, the terms and conditions of the DIP Loan as outlined in Exhibit B hereto and (b) granting such other and further relief as the Court deems just and proper.

Dated: July 22, 2026

Respectfully submitted,

/s/ *Ronald E. Gold*
Ronald E. Gold (OH Bar No. 61351)
Erin P. Severini (OH Bar No. 91487)
Joy D. Kleisinger (OH Bar No. 101993)
**FBT GIBBONS LLP**
3300 Great American Tower
301 East Fourth Street
Cincinnati, OH 45202
Tel:  (513) 651-6800
Fax:  (513) 651-6981
Email: rgold@fbtgibbons.com
        eseverini@fbtgibbons.com
        jkleisinger@fbtgibbons.com

-and-

Schuyler Carroll (NY Bar No. 2511707)
(*pro hac vice* application forthcoming)
**MANATT, PHELPS & PHILLIPS, LLP**
7 Times Square
New York, NY 10036
Tel:  (212) 790-4500
Email: scarroll@manatt.com

Proposed Attorneys for the Debtor, Magellan
Aerospace, Middletown, Inc.

**MEMORANDUM IN SUPPORT**

## I.      JURISDICTION AND VENUE

1.      The United States Bankruptcy Court for the Southern District of Ohio (the "**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the General Order 30-7 from the United States Bankruptcy Court for the Southern District of Ohio, dated January 29, 2024 (the "**General Order**").  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  The Debtor confirms its consent, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are sections 105, 361, 362, 363, 364, 503, and 507 of the United States Code, 11 U.S.C. §§ 101–1532 (the "**Bankruptcy Code**"), Bankruptcy Rules 2002, 4001, 6003, 6004, and 9014, Rules 4001-2, 4001-3, 7004-1, and 9013-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of Ohio (the "**Local Rules**"), and the General Order.

## II.     BACKGROUND

3.      On July 22, 2026 (the "**Petition Date**"), the Debtor filed its voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") commencing the above captioned case (the "**Chapter 11 Case**").

4.      An official committee of unsecured creditors has yet to be appointed in this Chapter 11 Case.  Further, no trustee or examiner has been requested or appointed in this Chapter 11 Case.

5.      The Debtor is a corporation located in Middletown, Ohio.  The Debtor is in possession of its property and operating and managing its business as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

6.      A detailed description of the Debtor and its business, the facts and circumstances leading up to the filing of the Debtor's Chapter 11 Case, and the facts supporting this Motion are set forth in the *Declaration of Michael I. Goldberg in Support of Debtor's Chapter 11 Petition and First Day Motions* (the "**First Day Declaration**"), which is being filed concurrently herewith and is incorporated by reference in this Motion. In further support of this Motion, the Debtor files concurrently herewith and incorporated by reference in this Motion, the *Declaration of Brian Ayers in Support of Debtor's Motion for Entry of Interim and Final Orders (I) Authorizing Debtor to Obtain Post-Petition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), and 364€; (II) Scheduling a Final Hearing on The Motion Pursuant to Bankruptcy Rule 4001, and (III) Granting Related Relief* (the "**DIP Declaration**").

## III.     REQUESTED RELIEF

### A.      **The Existing Loans And Need For Post-Petition Financing**

7.      The Debtor is an aerospace manufacturing company that has existed since 1928, and was named "Aeronca, Inc." from 1966 to 2012.  In 1986, the Debtor merged with Fleet Acquisition Corporation and became part of the Magellan Companies' family of companies, and in 2012, the Debtor changed its name to "Magellan Aerospace Middletown, Inc."

8.      The Debtor has suffered net losses for the last several years.  In order to maintain operations, the Debtor has been dependent upon loans made by its corporate parent, Magellan USA.  The Debtor currently owes over $80 million to Magellan USA in unsecured intercompany loans (the "**Prepetition Loans**").

9.      Before the Petition Date, however, Magellan USA made clear that it would no longer fund the Debtor on an unsecured basis.  It is clear that the Debtor cannot operate without continued funding.  Under these circumstances, the Debtor and its advisors determined that the Debtor would require significant post-petition financing to support its continued operations as well as the post-petition administration of this Chapter 11 Case.

10.     As of the Petition Date, there are no entities with security interests in the Debtor's property.

11.     In light of the Debtor's liquidity needs, the DIP Financing is vital to its continued existence and the execution and any exit strategy.  The Debtor and its advisors, including Michael I. Goldberg, its Independent Director, have worked with Magellan USA to provide that financing.

B.      **Description of the Debtor-in-Possession Financing**

12.     By this Motion, the Debtor proposes to enter into the DIP Loan with Magellan USA.  The material terms of the DIP Loan are outlined in Exhibit B, attached hereto.

13.     Shortly before the Petition Date, Magellan USA, as lender, and the Debtor, as borrower, signed the DIP Term Sheet, pursuant to which Magellan USA agreed to provide the Debtor with a revolving credit facility of up to $20,000,000, for the purposes set forth in the proposed budget, including to fund operations and administrative expenses incurred by the Debtor.  The DIP Term Sheet further provides for $2,000,000 to be made available upon interim approval, with the balance to be available upon final approval.  Finally, the DIP Term Sheet provides for the roll-up of Prepetition Loans at a rate of three to one, which will not be effective until entry of the Final Order.  The total new money loaned under the DIP Term Sheet, together with the total Prepetition Loans rolled up under the DIP Term Sheet will be known as the "**DIP Facility**."

14.     The Debtor and its advisors have attempted to identify other potential sources of post-petition financing, as described in the DIP Declaration.  Unfortunately, at this time, it appears

5

that the only available source is Magellan USA. Magellan USA, however, has agreed to provide post-petition financing on economic terms that are very favorable to the Debtor. Following discussions, the Debtor agreed to enter into the DIP Term Sheet with the proposed DIP lender, Magellan USA. The DIP Term Sheet and the DIP Facility were the product of good faith discussions and include terms that are customary in this District.

15. The Debtor also solicited proposals from other potential sources outside of the Debtor's capital structure with the goal of obtaining debtor-in-possession financing on terms that were most advantageous to them. The potential third-party lenders contacted by the Debtor included various institutions that routinely provide debtor-in-possession financing, including both well-known commercial banks, credit funds and specialty lenders. No third parties contacted by the Debtor were interested in providing debtor-in-possession financing except Magellan USA, the proposed DIP lender.

16. For these reasons, as well as for the reasons set forth in the First Day Declaration, the Debtor believes that entry into the DIP Facility is an exercise of the Debtor's sound business judgment and will maximize value of its estates to the benefit of all the Debtor's stakeholders. The DIP Facility demonstrates substantial support provided to the Debtor by Magellan USA and this committed financing is critical for the Debtor to stabilize its operations. Accordingly, the Debtor respectfully requests that the Court approve the Debtor's entry into the DIP Facility.

17. By this Motion, the Debtor requests entry of an interim order, substantially in the form attached hereto, the Interim Order, and the Final Order.

C.      **Concise Statement Pursuant to Bankruptcy Rule 4001 and Local Rule 4001-2[3]**

18.      Pursuant to Bankruptcy Rules 4001(c) and (d), and Local Rule 4001-2(b)(1), the following is a concise summary highlighting the proposed material terms of the DIP Facility, as specified in the DIP Term Sheet and the Interim Order.

| Applicable Rule | Summary of Material Terms |
| --- | --- |
| **Borrower**<br>Bankruptcy Rule 4001(c)(1)(B) | Magellan Aerospace, Middletown, Inc.<br><br>*See* DIP Term Sheet at p. 1. |
| **Guarantor**<br>Bankruptcy Rule 4001(c)(1)(B) | Not Applicable |
| **Agent**<br>Bankruptcy Rule 4001(c)(1)(B) | Not Applicable |
| **DIP Lender**<br>Bankruptcy Rule 4001(c)(1)(B) | Magellan Aerospace USA, Inc.<br><br>*See* DIP Term Sheet at p. 1. |
| **Reporting Information**<br>Bankruptcy Rule 4001(c)(1)(B) | *See* Interim Order at 12. |
| **Term**<br>Bankruptcy Rule 4001(b)(l)(B)(iii), 4001(c)(1)(B) | Matures at the earliest to occur of: (a) fifteen (15) days after the Petition Date if the Interim Order has not been entered, (b) forty (40) days after the Petition Date if the Final Order has not been entered; (c) the occurrence and continuance of any Event of Default (as defined below) beyond the expiration of any applicable cure or grace period; (d) the effective date of a confirmed plan of reorganization or liquidation, which plan shall provide for indefeasible payment in full of all Obligations (including the Pre-Petition Obligations to the extent of the Roll-Up Amount) or is otherwise acceptable to Magellan USA in its sole discretion; (e) the date which is the closing date of any 363 Sale; and (f) 180 days from the Petition Date.<br><br>*See* DIP Term Sheet at 2-3. |

---

[3] The summaries contained in this Motion are qualified in their entirety by the provisions of the documents referenced. To the extent anything in this Motion is inconsistent with such documents, the terms of the applicable documents shall control. Capitalized terms used in the following summary chart but not otherwise defined have the meanings given to them in the DIP Credit Agreement or the Interim Order, as applicable.

| | |
|---|---|
| **Commitment**<br>Bankruptcy Rule 4001(c)(1)(B) | (i) New Money Revolving Credit Facility in an aggregate amount of $20,000,000, with $2,000,000 available in the interim.<br><br>(ii) Roll-Up Loans in an aggregate principal amount not to exceed $60,000,000<br><br>*See* DIP Term Sheet at 1. |
| **Conditions of Borrowing**<br>Bankruptcy Rule 4001(c)(1)(B) | All advances under the DIP Facility (collectively, the "**DIP Loans**") shall be available to the Debtor upon one (1) Business Day's prior written notice by the Debtor to Magellan USA, unless the Termination Date shall have occurred before any such date.  Upon the service of such a written notice, the Debtor will pay all accrued and unpaid interest outstanding under the DIP Loans at the time of such notice of borrowing.<br><br>*See* DIP Term Sheet at 1. |
| **Interest Rates**<br>Bankruptcy Rule 4001(c)(1)(B) | SOFR plus 1.5% per annum<br>In the event of default, the interest rate will increase by 2% per annum<br><br>All accrued and unpaid interest shall be payable to Magellan USA on the last Business Day of each month until all Obligations owed to Magellan USA are paid in full, provided that the Debtor shall pay all accrued and unpaid interest prior to or in connection with a notice of borrowing.  All computations of interest payable hereunder shall be calculated on the basis of a year of 365 days (or 366 days in a leap year), and in each case shall be payable for the actual number of days elapsed (including the first day but excluding the last day).<br><br>*See* DIP Term Sheet at 3. |
| **Adequate Protection**<br>Bankruptcy Rules 4001(b)(l)(B)(iv), 4001(c)(1)(B)(ii) | As adequate protection for the use of its cash collateral and in consideration for being primed in part by Magellan USA's claims and liens, to the extent any Pre-Petition Lender exists it (a) shall receive a claim having priority over any and all expenses of the kind specified in, among other sections of the Bankruptcy Code, Sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 726, and 1114, subject to payment of the Carve Out and subject to the super-priority administrative claims of Magellan USA under the DIP Facility and existing claims of the Pre-Petition Lender on its pre-petition collateral; and (b) shall have valid, binding, enforceable and perfected replacement liens in all DIP Collateral, subject to payment of the Carve Out and any prepetition liens, in each case equal to the sum of the aggregate diminution, if any, subsequent to the Petition Date, in the value of its pre-petition collateral resulting from the sale, use, lease or disposition of such pre-petition collateral during the Chapter 11 Case (the **"Pre-Petition Lender Adequate Protection Liens"**).<br><br>*See* DIP Term Sheet at 4. |
| **Budget**<br>Bankruptcy Rule 4001 (c)(1)(B) | *See* <u>Exhibit 1</u> to the Interim Order. |

| | |
|---|---|
| **Variance Covenant**<br>Bankruptcy Rule<br>4001(c)(l)(B) | At no time shall the Loan Parties permit the aggregate variance for disbursements on any applicable measured period to exceed 120%; provided, however, (i) for the purpose of determining compliance with the foregoing, any disbursement that is deferred from the measured period and paid in a subsequent period will be deemed to have been paid in the period in which it was included in the Budget to the extent that the deferral of such disbursement would cause a violation in the subsequent period in the which it was actually paid, and (ii) disbursements for professional fees are to be measured against the Budget based on the amount escrowed each week for such fees.  At no time shall the Loan Parties permit the aggregate variance for receipts on any Variance Report to be less than 80%% (with respect to any applicable measured period); provided, however, for the purpose of determining compliance with the foregoing, any receipt that is accelerated and received prior to its budgeted Reporting Period will be deemed to have been received in the Reporting Period in which it was included in the Approved Budget to the extent that the acceleration of such receipt would cause a violation in the Reporting Period in which it was included in the Approved Budget.<br><br>*See* DIP Term Sheet at 15. |
| **Events of Default**<br>Bankruptcy Rule<br>4001(c)(l)(B) | The following shall be events of default:<br><br>• Entry of an Interim or Final Order in form and substance that is not acceptable to the Lender in its sole discretion.<br><br>• The Chapter 11 Case shall be converted to a case under Chapter 7 of the Bankruptcy Code or be dismissed, or a motion requesting such relief shall have been filed by any party.<br><br>• Filing or support of a proposed plan of reorganization by Debtor that does not provide for the indefeasible payment in full of the DIP Obligations and the Pre-Petition Obligations (to the extent secured by the DIP Liens pursuant to the Roll-Up), unless otherwise agreed in writing by Lender in its sole discretion.<br><br>• Entry of an order confirming (or the filing of any motion or pleading requesting confirmation of) a plan of reorganization that does not require the indefeasible repayment in full of the DIP Obligations and the Pre-Petition Obligations (to the extent secured by the DIP Liens pursuant to the Roll-Up) as of the effective date of the plan, unless otherwise agreed in writing by the Lender in its sole discretion.<br><br>• Appointment of a trustee under Section 1104 of the Bankruptcy Code without the express written consent of the Lender, or the filing of any motion or other pleading requesting such relief which the Debtor fails to timely oppose.<br><br>• Entry of an order by the Bankruptcy Court staying or vacating the DIP Facility, the Interim Order or Final Order approving the DIP Facility, without the prior written consent of the Lender or the filing of a motion |

<table>
<tr><td></td><td>

or other pleading requesting such relief which the Debtor fails to timely oppose.

- Any attempt by Debtor to obtain, or if any other party in interest obtains, an order of the Bankruptcy Court or other judgment, and the effect of such order or judgment is to, invalidate, reduce or otherwise impair the Lender's claims, or to subject any of the Lender's collateral to a surcharge pursuant to Section 506(c) of the Bankruptcy Code.

- A final order is entered granting any creditor with a claim in excess of $1,000,000 relief from the automatic stay or the right to retain or withhold from payment to the Debtor any asset or collection of assets having a value in excess of $1,000,000.

- Failure to make all payments under the DIP Facility when due.

- Any breach in any material respect of any covenant or obligation set forth in the DIP Facility or any Interim Order or Final Order.

- The Debtor takes (or support any other Person in taking) any action in order to restrict or prohibit the Lender from submitting a "credit bid" for any assets of the Debtor.

- The Debtor fails to disburse any sale proceeds to the Lender, in accordance with the priority of proceeds set forth herein, contemporaneously with the closing of a sale of substantially all of their assets, subject to payment of the Carve Out.

- The commencement of any suit by any Person that is not subject to the automatic stay against the Lender that would, or seek to, in any way reduce, set off, or subordinate the Obligations or DIP Liens.

- The Debtor shall be denied, or otherwise not obtain or lose authorization to, use cash collateral as that term is used in section 363 of the Bankruptcy Code.

- Any Person is granted (or awarded) an administrative expense claim in excess of $250,000 that is not subordinated to the super-priority administrative claims granted to the Lender.

- The Debtor seeks to grant a security interest in or lien on any of its assets other than the DIP Liens.

- The payment of or application by the Debtor for authority to pay any prepetition claim or other amount without the prior written consent of the Lender other than amounts set forth in the Budget (subject to any Permitted Variance).

- The failure to comply with the Budget (subject to any Permitted Variance).

</td></tr>
</table>

10

| | |
|---|---|
| | *See* DIP Term Sheet at 10-12. |
| **Indemnification** Bankruptcy Rule 4001(c)(1)(B)(ix); Local Rule 4001-2(b)(2)(K) | Indemnification and expense reimbursement provisions ordinary and customary for financings of this type.<br><br>*See* DIP Term Sheet at 6. |
| **Entities with Interests in Cash Collateral** Bankruptcy Rule 4001(b)(l)(B)(i) | To the best of the Debtor's knowledge, no entities have an interest in Cash Collateral.<br><br>*See* DIP Term Sheet at 1. |
| **Carve-Out** Bankruptcy Rule 4001(c)(1)(B); Local Rule 4001- 2(b)(2)(C) | The liens and claims granted to Magellan USA and any Pre-Petition Lender in the Interim Order, the Final Order, this term sheet, and/or any related documents are all subject to the Carve Out.<br><br>The Carve Out includes, to the extent allowed under the Bankruptcy Code and not otherwise paid from retainers: (i) all unpaid postpetition fees required to be paid to the Clerk of the Court and to the U.S. Trustee, (ii) unpaid postpetition fees and expenses incurred pre-termination notice of the professionals retained by the Debtor and by any Committee (up to a maximum of $50,000 for professionals retained by Committee) (iii) unpaid fees and expenses incurred post-Termination Notice of the professionals retained by the Debtor (up to $250,000) and any court-appointed committee (up to $100,000), (iv) all reasonable fees and expenses incurred by a Section 726(b) trustee (up to $50,000).<br><br>*See* DIP Term Sheet at 13. |
| **Fees** Bankruptcy Rule 4001(c)(l)(B) | <u>Origination Fee</u>: None<br><br><u>Original Issue Discount</u>: None<br><br><u>Prepayment Fee</u>: None<br><br><u>Exit Fee</u>: None<br><br><u>Lender's Fees and Expenses</u>: Debtor shall reimburse all reasonable documented costs and expenses, including legal fees and financial advisor fees incurred in connection with the DIP Facility and the Debtor's chapter 11 case (pre- and post-petition).  Such costs and expenses shall be payable by the Debtor promptly upon written demand (but in no event more than 10 business days from the date of such demand) and without requiring Bankruptcy Court approval, regardless of whether such fees are provided for in the Budget. Failure to pay such fees and expenses within ten business days of delivery of the applicable invoice shall be an Event of Default under the DIP Facility. |

| | |
|---|---|
| | *See* DIP Term Sheet at 2, 7. |
| **506(c) Waiver**<br>Bankruptcy Rule 4001(c)(l)(B)(x); Local Rule 4001- 2(b)(2)(C) | The Lender shall not be subject to the equitable doctrine of "marshalling" or any other similar doctrine with respect to any of the DIP Collateral.  The Final Order shall provide for a waiver of the ability to surcharge under section 506(c) or 105(a) of the Bankruptcy Code or any other applicable law.<br><br>*See* DIP Term Sheet at 7. |
| **Section 552(b)**<br>Bankruptcy Rule 4001(c)(l)(B) | No 552(b) waiver.<br><br>*See* DIP Term Sheet at 7. |
| **Stipulations to Prepetition Liens and Claims**<br>Bankruptcy Rule 4001(c)(1)(B)(iii); Local Rule 4001- 2(b)(2)(C) | None |
| **Liens and Priorities**<br>Bankruptcy Rule 4001(c)(1)(B)(i); Local Rule 4001- 2(b)(2)(D) | Secured by all assets and properties of the Debtor, with a:<br><ul><li>First priority lien on all of the Debtor's unencumbered property, including, upon entry of the Final Order, proceeds of avoidance actions,</li><li>Junior priority lien on all assets encumbered by a permitted senior lien,</li></ul>in each case, subject to the Carve-Out.<br><br>*See* DIP Term Sheet at 6-7. |
| **Milestones**<br>Bankruptcy Rule 4001(c)(1)(B); Local Rule 4001- 2(a)(ii)<br>Local Rule 4001- 2(b)(2)(J) | None |
| **Challenge Period**<br>Bankruptcy Rule 4001(c)(l)(B) | Not Applicable |
| **Waiver/Modification of the Automatic Stay**<br>Bankruptcy Rule 4001(c)(1)(B)(iv) Local Rule 4001- 2(b)(2)(L) | The DIP Term sheet provide that automatic stay provisions of section 362 of the Bankruptcy Code shall be modified to the extent necessary to permit Magellan USA to exercise, upon the occurrence and during the continuance of any Event of Default, all rights and remedies provided for in the DIP Loan Documents, as detailed in the Events of Default section. |

| | |
|---|---|
| | *See* DIP Term Sheet at 10. |
| **Release/Waiver of Estate Actions** Bankruptcy Rule 4001(c)(l)(B)(viii) | A release by the Debtor of all claims and causes of action against Magellan USA solely related to the DIP Facility. *See* Interim Order at 6-7. |

D.      **Highlighted Provisions Pursuant to Local Rule 4001-2(b)(2)**

19.      Key provisions included in the Interim Order required to be highlighted under Local Rule 4001–2(b)(2) (the "**Highlighted Provisions**") and their locations in the Interim Order required under Local Rule 4001–2(b)(3) are attached as Exhibit C.   None of the Highlighted Provisions are proposed to remain in effect if interim approval is granted, but final relief is denied.

IV.     **BASIS FOR RELIEF REQUESTED**

20.      As set forth above, the Debtor's ability to maximize the value of their estates and successfully execute any proposed plan or sale process hinges upon them being able to access postpetition financing.

21.      Pursuant to Section 364(c) of the Bankruptcy Code, a debtor may, in the exercise of its business judgment, incur secured debt if the debtor has been unable to obtain unsecured credit and the borrowing is in the best interests of the estate. *In re Simasko Production*, 47 B.R. 444, 448-9 (D. Colo. 1985) (authorizing interim financing agreement where debtor's best business judgment indicated financing was necessary and reasonable for benefit of estate); *In re Ames Dept. Stores*, 115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990) (with respect to post-petition credit, court "permit debtors-in-possession to exercise their basic business judgment consistent with their fiduciary duties"); *see also* Collier on Bankruptcy, ¶ 364.05 (15th ed. rev.).   Section 364(c) of the Bankruptcy Code provides in pertinent part:

      (c)      If the trustee [or debtor in possession] is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt:

      (1)      with priority over any and all administrative expenses of the kind specified in section 503(b) or 507(b) of this title;

      (2)      secured by a lien on property of the estate that is not otherwise subject to a lien; or

      (3) secured by a junior lien on property of the estate that is subject to a lien.

22.      In satisfying the standards of section 364(c) of the Bankruptcy Code, a debtor need not seek credit from every available source but should make a reasonable effort to seek other sources of credit available of the type set forth in Sections 364(a) and (b) of the Bankruptcy Code. *See In re Snowshoe Co.*, 789 F.2d 1085, 1088 (11th Cir. 1986) (trustee demonstrated by good faith effort that credit was not available without senior lien by unsuccessfully contacting other financial institutions in immediate geographic area; "the statute imposes no duty to seek credit from every possible lender before concluding that such credit is unavailable"); *see also Ames*, 115 B.R. at 40 (debtors demonstrated the unavailability of unsecured financing where debtors approached several lending institutions); *In re Plabell Rubber Prods., Inc.*, 137 B.R. 897,900 (Bankr. N.D. Ohio 1992) (same); *In re Sky Valley, Inc.,* 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988) (where there are few lenders likely to be able and/or willing to extend the necessary credit to the debtor, "it would be unrealistic and unnecessary to require [the debtor] to conduct an exhaustive search for financing"), aff'd sub nom., *Anchor Say. Bank FSB v. Sky Valley, Inc.*, 99 B.R. 117, 120 n.4 (N.D. Ga. 1989). After appropriate, robust and good faith discussions, the Debtor concluded that the proposed DIP Facility is the best (and likely only) alternative available under the circumstances of this case.

14

Bankruptcy courts routinely defer to a debtor's business judgment on most business decisions, including the decision to borrow money, unless such decision is arbitrary and capricious.

23.      Courts have articulated a three-part test to determine whether a debtor in possession is entitled to financing under section 364(c) of the Bankruptcy Code: (i) whether the debtor is unable to obtain unsecured credit under section 364(b) of the Bankruptcy Code, i.e., by allowing a lender only an administrative claim; (ii) whether the credit transaction is necessary to preserve the assets of the estate; and (iii) whether the terms of the transaction are fair, reasonable and adequate, given the circumstances of the debtor-borrower and the proposed lender. *See, e.g.*, *In re Farmland Indus., Inc.*, 294 B.R. 855, 880 (Bankr. W.D. Mo. 2003); *In re Aqua Assocs.*, 123 B.R. 192, 195-96 (Bankr. E.D. Pa, 1991); *Ames*, 115 B.R. 34, 37-39 (Bankr. S.D.N.Y. 1990); *In re Crouse Group, Inc.*, 71 B.R. 544, 546 (Bankr. E.D. Pa. 1987).

A.      **No More Favorable Alternative Financing is Available**

24.      The Debtor is unable to obtain credit that is not both secured and entitled to superpriority administrative claim status from any other financing source at comparable terms. The DIP Facility is being offered with minimal fees and low interest rates by industry standards for DIP facilities.  In light of the Debtor's current financial status, Magellan USA is likely the Debtor's only financing option.  Thus, it is clear that the Debtor can show "by a good faith effort that credit was not available without" the protections of section 364(c) of the Bankruptcy Code. *Snowshoe*, 789 F.2d at 1088.

B.      **The Debtor Urgently Needs Financing**

25.      Unless the Debtor is authorized to obtain the financing requested herein, the Debtor will not have sufficient available sources of working capital to maintain its business, which is necessary to preserve the value of the Debtor's estates.

C.        **The Financing is Fair and Reasonable**

26.        The Debtor believes that the DIP Terms are fair, just, and reasonable under the circumstances. The DIP Terms are ordinary and appropriate for secured financing to a debtor in possession, reflect the Debtor's exercise of their prudent business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and fair consideration. The DIP Terms and the proposed Interim Order have been drafted in good faith by the Debtor and Magellan USA, with all parties represented by counsel. Accordingly, the Debtor believes that any credit extended under the terms of the DIP Orders is extended in good faith by Magellan USA as that term is used in Section 364(e) of the Bankruptcy Code.

27.        In light of the Debtor's current financial status, the Debtor is unable to obtain credit that is unsecured. Accordingly, after appropriate investigation and analysis, the Debtor has concluded that the post-petition financing set forth herein is the best alternative available under the circumstances. Bankruptcy Courts routinely defer to a debtor's business judgment on most business decisions, including the decision to borrow money and/or obtain credit. *See Group of Institutional Investors v. Chicago Mil. St. P. & Pac. Ry.*, 318 U.S. 523, 550 (1943); *In re Simasko Prod. Co.*, 47 B.R. 444, 449 (D. Colo. 1985) ("Business judgments should be left to the board room and not this Court"); *In re Lifeguard Indus., Inc.*, 37 B.R. 3, 17 (Bankr. S.D. Ohio 1983) ("More exacting scrutiny would slow the administration of the Debtor's estate and threaten the court's ability to control a case impartially."); *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1311 (5th Cir. 1985).

28.        Additionally, unless the decision is arbitrary and capricious, a bankruptcy court should defer to a debtor's business judgment regarding the need for, and the proposed use of, the requested funds. *In re Curlew Valley Assoc.*, 14 B.R. 507, 511-13 (Bankr. D. Utah 1981). Bankruptcy Courts will generally not second guess a debtor's business decisions when those

16

decisions involve "a business judgment made in good faith, upon a reasonable basis, and within the scope of his authority under the Code." *Id.* at 513-14 (footnotes omitted).

29. In the instant case, the Debtor has exercised sound business judgment by seeking advice from its legal and financial advisors in making the determination that the DIP Facility and DIP Term Sheet are fair and reasonable and in the best interest of the Debtor's estate. Accordingly, the Debtor should be granted authority under section 364(c) of the Bankruptcy Code to enter into the DIP Term Sheet and to borrow funds from Magellan USA on the basis described herein, on a secured basis.

30. Ultimately, the requested relief is vital. Without the DIP Facility, the Debtor cannot pay its employees and suppliers to continue production and will ultimately fail to fulfill its contractual obligations to its clients, thus failing to preserve its estate.

## V. REQUEST FOR FINAL HEARING

31. Pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2), the Debtor requests that the Court set a date which is no later than 21 days after the entry of the Interim Order, to hold a hearing to consider entry of the Final Order and the permanent approval of the relief requested in this motion. The Debtor also requests authority to serve a copy of the signed Interim Order, which fixes the time and date for the filing of objections, if any, to entry of the Final Order, by first class mail upon the notice parties listed below, and further request that the Court deem service thereof sufficient notice of the hearing on the final order under Bankruptcy Rule 4001(c)(2).

## VI. WAIVER OF BANKRUPTCY RULE 6004(a) AND 6004(h)

32. To implement the foregoing successfully, the Debtor seeks a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

**VII.   NO PRIOR REQUEST**

33.     No prior request for the relief sought herein has been made by the Debtor to this or any other Court.

**VIII.   NOTICE**

34.     Notice of this Motion has been provided to: (i) the Southern District of Ohio Office of the United States Trustee; (ii) any party whose interests are directly affected by this specific pleading, including the Utilities Companies; (iii) those persons who have formally appeared and requested notice and service in these proceedings pursuant to Bankruptcy Rules 2002 and 3017; (iv) Magellan Aerospace USA, Inc. (the proposed DIP lender); (v) counsel to Magellan Aerospace USA, Inc.; (vi) the 20 largest unsecured creditors of the Debtor; (vii) all governmental agencies having a regulatory or statutory interest in this Chapter 11 Case; (viii) each Bank at which the Debtor has an account; and (ix) the state attorneys general for all states in which the Debtor conducts business. Because of the exigencies of the circumstances and the irreparable harm to the Debtor that will ensue if the relief requested herein is not granted, the Debtor submits that no other notice need be given.  **Please take notice that the Debtor filed a Motion for an Expedited Hearing to consider First Day Motions, including the foregoing:**

> **Notice is hereby given that the foregoing Motion will be heard by the Court on July 23, 2026 at 2:00 p.m. prevailing Eastern Time or as soon thereafter as counsel may be heard in the United States Bankruptcy Court, 221 East Fourth Street, Atrium Two Suite 800, Cincinnati, Ohio 45202.**

**IX.   CONCLUSION**

35.     WHEREFORE, the Debtor respectfully requests that the Court enter the Interim Order substantially in the form attached hereto as Exhibit A, granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

18

Dated: July 22, 2026

Respectfully submitted,

/s/ *Ronald E. Gold*
Ronald E. Gold (OH Bar No. 61351)
Erin P. Severini (OH Bar No. 91487)
Joy D. Kleisinger (OH Bar No. 101993)
**FBT GIBBONS LLP**
3300 Great American Tower
301 East Fourth Street
Cincinnati, OH 45202
Tel:  (513) 651-6800
Fax:  (513) 651-6981
Email: rgold@fbtgibbons.com
        eseverini@fbtgibbons.com
        jkleisinger@fbtgibbons.com

-and-

Schuyler Carroll (NY Bar No. 2511707)
(*pro hac vice* application forthcoming)
**MANATT, PHELPS & PHILLIPS, LLP**
7 Times Square
New York, NY 10036
Tel:  (212) 790-4500
Email: scarroll@manatt.com

Proposed Attorneys for the Debtor, Magellan
Aerospace, Middletown, Inc.

## EXHIBIT A

**(Proposed Interim Order)**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| MAGELLAN AEROSPACE, MIDDLETOWN, | : | Case No. 26- |
| INC., | : | |
| | : | |
| Debtor. | : | Honorable Beth A. Buchanan |

**INTERIM ORDER (I) AUTHORIZING DEBTOR TO OBTAIN POSTPETITION FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (III) SCHEDULING A FINAL HEARING AND (IV) GRANTING RELATED RELIEF [RELATED TO DOCKET NO.     ]**

Upon consideration of the motion (the "**Motion**")[1] of the Debtor for entry of an interim order (this "**Interim Order**") (a) approving and authorizing, on an interim basis, the Debtor to (i) obtain post-petition debtor-in-possession financing from Magellan USA and (ii) execute and deliver DIP Documents that confirm with the DIP Term Sheet; (b) approving, on an interim basis, the terms and conditions of the DIP Loan, including, but not limited to, (i) authorizing the Debtor to borrow under the DIP Loan an initial amount of up to $2,000,000 and further, pending a final

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

1

hearing on this Motion, (ii) authorizing the additional terms outlined in Exhibit B and any interim or final Order on this Motion, (iii) scheduling a final hearing on this Motion after expiration of the fourteen (14) day period required by Bankruptcy Rule 4001, (iv) approving the form and manner and notice of the Final Hearing to consider entry of a final order granting the relief sought herein on a permanent basis; and (c) granting related relief; and having requested in the Motion entry of a final order: (a) approving, on a final basis after the Final Hearing, the terms and conditions of the DIP Loan as outlined in Exhibit B hereto and (b) granting such other and further relief as the Court deems just and proper; all as more fully set forth in the Motion; and upon the First Day Declaration and the DIP Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 the General Order 30-7 from the United States Bankruptcy Court for the Southern District of Ohio, dated January 29, 2024; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtor's estates, its creditors, and other parties in interest; and this Court having found that the Debtor's notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "**Hearing**"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor,

2

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW ON AN INTERIM BASIS FOR PURPOSES OF ENTERING THIS INTERIM ORDER:**

A.      On the Petition Date, the Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Ohio (the "**Bankruptcy Court**").  The Debtor is continuing in the management and possession of its business and properties as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

B.      Consideration of the Motion constitutes a "core proceeding" as defined in 28 U.S.C. §§ 157(b)(2)(A), (G), (K), (M) and (O).  This Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334.

C.      Sufficient and adequate notice of the Motion has been provided under the urgent circumstances present and based upon the notice sent to the Interim Noticed Parties (defined below), pursuant to Bankruptcy Rules 2002, 4001(b), (c) and (d) and 9014 and section 102(1) of the Bankruptcy Code, as required by section 363(b) of the Bankruptcy Code, and no further notice or, or interim or preliminary hearing on, the Motion or this Interim Order is necessary or required.

D.      It is in the best interests of the Debtor's creditors and the estate that it be allowed to continue its operations under the terms and conditions set forth herein.

E.      Notice of the relief sought by the Motion, and the Interim Hearing with respect thereto, pursuant to Bankruptcy Rules 2002 and 4001(b) and (d) and section 102(1) of the Bankruptcy Code, as required by section 363(b) of the Bankruptcy Code has been given to the following parties in interest: the U.S. Trustee, all secured creditors (of which there are none) and the creditors holding the twenty (20) largest unsecured claims against the Debtor's estate (collectively, the "**Interim Noticed Parties**").

3

F.     Subject to the rights of parties in interest as set forth herein, the Debtor has admitted, stipulated and agreed:

(i)     The Prepetition Loans constitute the legal, valid and binding obligation of Debtor;

(ii)     As of the Petition Date, Debtor is liable for the payment of the Prepetition Loans, and the Prepetition Loans shall be an allowed unsecured claim in an amount over $80,000,000. Any such claims that are rolled up if and when the Final Order is entered, shall be secured claims in an amount not exceeding $60,000,000.

(iii)     No offsets, defenses or counterclaims to the Prepetition Loans exist, and no portion of the Prepetition Loans are subject to contest, objection, recoupment, defense, counterclaim, offset, avoidance, recharacterization, subordination or other claim, cause of action or challenge of any nature under the Bankruptcy Code, under applicable non-bankruptcy law or otherwise;

(iv)     The Debtor does not have, and hereby releases, and is forever barred from bringing any claims, counterclaims, causes of action, defenses or setoff rights relating to the Prepetition Loans or otherwise, against Magellan USA and its affiliates, subsidiaries, agents, officers, directors, employees, professionals, advisors, predecessors in interest, successors and assigns.

G.     The Debtor represents as follows:

(i)     Without access to the funds provided through the DIP Facility proposed by the Motion, the Debtor will not have the funds necessary to pay trade vendors, wages and benefits, suppliers, overhead and other expenses necessary for the continued operation of the Debtor's business and the management and preservation of the Debtor's assets and properties.  The Debtor has requested that pursuant to this Interim Order, that Prepetition Lender make funds available to the Debtor, to be used by the Debtor solely for the purposes in the First Day Motions and other ordinary course expenses.  The ability of the Debtor to continue its business under Chapter 11 of

the Bankruptcy Code depends upon the Debtor utilizing the DIP Facility. Accordingly, the relief requested in the Motion is necessary, essential and appropriate for the continued operation of the Debtor's business, the management and preservation of its assets and properties, and is in the best interests of the Debtor, its estate and creditors.

(ii) The terms and conditions contained in this Interim order are in the best interests of the Debtor, its estate and creditors;

(iii) The relief requested by the Motion is necessary to avoid immediate and irreparable harm to its estate.

H. Good, adequate and sufficient cause has been shown to justify the granting of the relief requested in the Motion, and the immediate entry of this Interim Order, and such entry is necessary

I. Magellan USA has consented to the terms of this Interim Order.

J. The terms of the DIP Loan have been discussed in good faith, and the DIP Loan is being extended in good faith, as that term is used in 11 U.S.C. § 364.

K. The terms and conditions of the DIP Documents are fair and reasonable, the best available under the circumstances, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and consideration.

L. The Debtor is unable to procure financing in the form of unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code, as an administrative expense under section 364(a) or (b) of the Bankruptcy Code, or in exchange for the grant of an administrative expense priority pursuant to section 364(c)(1) of the Bankruptcy Code, without the grant of the DIP Liens described herein. The Debtor has been unable to procure the necessary financing on terms more favorable

5

than the financing offered by Magellan USA pursuant to the DIP Term Sheet and this Interim

Order.

M.      Under the circumstances of this Chapter 11 Case, this Order is a fair and reasonable

response to Debtor's request for Magellan USA's provision of the DIP Loan, and the entry of this

Order is in the best interest of Debtor's estate and its creditors.

N.      There has not been an examiner or trustee appointed in Chapter 11 Case.  In the

future, the Budget may provide for a carve-out for proposed counsel to the Debtor for fees that

may be approved in the future.  Funds subject to any such carve out provision shall remain property

of the bankruptcy estate until fees are authorized by Court order and such funds are actually paid

to the approved professionals.

**NOW, THEREFORE, IT IS HEREBY ORDERED:**

1.      <u>Motion Granted</u>.  The Motion is GRANTED on an interim basis as set forth herein.

2.      <u>Binding Effect</u>.  The provisions of this Interim Order shall be binding upon and

inure to the benefit of Magellan USA, the Debtor, the Debtor's estate and their respective

successors and assigns (including any trustee appointed as a representative of the Debtor's estate

or in any successor case).

3.      <u>Authorization to Incur DIP Loan Debt</u>

a.      *DIP Documents*.  Debtor is hereby authorized and has agreed to: (1) execute

the DIP Documents, including the DIP Term Sheet and all documents that Magellan USA finds

reasonably necessary to implement the transactions contemplated by this Order; and (2) perform

its obligations under and comply with all of the terms and provisions of the DIP Documents and

this Order.  Upon execution and delivery thereof, the DIP Documents shall constitute valid and

binding obligations of Debtor enforceable in accordance with their terms.  To the extent there

6

exists any conflict among the terms of the Motion, the DIP Documents, and this Order, this Order shall govern and control.

b.      *Permitted Uses of DIP Loan Debt*.  Debtor is authorized and has agreed to incur DIP Loan Debt solely: (1) in accordance with the terms and provisions of this Order and (2) to the extent required to pay those expenses enumerated in the First Day Motions and in the ordinary course of business, as and when such expenses become due and payable.  If Magellan USA advances monies to Debtor and Debtor uses such monies other than in accordance with the terms or provisions of this Order, such advances shall be considered DIP Loan Debt for purposes of this Order.

c.      *Highlighted Terms of DIP Facility*.  Without limiting the foregoing, the following terms of the DIP Facility are specifically approved:

i.  Maximum Amount of DIP Facility.  The maximum principal amount of the revolving credit DIP Facility available during the interim period is $2,000,000.

ii.  Permitted Draws of DIP Loan.  The Debtor is permitted unlimited draws from the Interim DIP Facility, provided the Debtor does not exceed the maximum principal amount, and meets all requirements set out for Interim Loans under the DIP Term Sheet.

iii.  Postpetition Letters of Credit.  No letters of credit may be issued under or in connection with the DIP Agreement.

iv.  Interest.  DIP Loan Debt shall bear interest at a per annum rate equal to the Default Rate (as defined in the DIP Term Sheet) plus, following an Event of Default, two percent (2.0%).

v.  DIP Loan Fees.  There are no fees associated with the DIP Loan.

7

vi. Maturity. The DIP Loan Debt shall mature and be due and payable in full by Debtor on December 31, 2026, which date may be extended by Magellan USA in its sole and absolute discretion.

d. *Superpriority Administrative Expense Status; DIP Liens*. The DIP Loan Debt is hereby granted superpriority administrative expense status under section 364(c)(1) of the Bankruptcy Code, with priority over all costs and expenses of administration of the Chapter 11 Case that are incurred under any provision of the Bankruptcy Code. In addition, Magellan USA is hereby granted the DIP Liens to secure the DIP Loan Debt. The DIP Liens, pursuant to sections 364(c)(2), (c)(3) and (d) of the Bankruptcy Code, are perfected without any further action by Debtor or Magellan USA and without the execution, filing or recordation of any financing statements, security agreements, mortgages or other documents or instruments.

e. Prohibition Against Additional Debt. Other than the DIP Loan, Debtor will not incur or seek to incur debt secured by a lien, or which is given superpriority administrative expense status under section 364(c)(1) of the Bankruptcy Code, unless, in addition to the satisfaction of all requirements of section 364 of the Bankruptcy Code: (1) Debtor and Magellan USA have both consented to such order; (2) at the time such an order is entered, there is no outstanding debt owed to Magellan USA, and no obligation of Magellan USA to extend DIP Loan Debt exists; or (3) such credit or debt is first used to pay the Prepetition Loans in full in cash.

4. Right to Credit Bid. In connection with the sale or other disposition of all or any portion of the DIP Collateral, whether under section 363 of the Bankruptcy Code, section 1129 of the Bankruptcy Code or otherwise, pursuant to section 363(k) of the Bankruptcy Code, Magellan USA shall have the right to use the Prepetition Loans, DIP Loan, or any part thereof to credit bid with respect to any bulk or piecemeal sale of all or any portion of the DIP Collateral.

8

5. <u>Waiver of Right to Return/Consent to Setoff</u>.  Debtor hereby waives its rights: (a) to return any of the DIP Collateral pursuant to section 546(h) of the Bankruptcy Code; (b) to consent to any order permitting any claims pursuant to section 503(b)(9) of the Bankruptcy Code; and (c) to consent to setoff pursuant to section 553 of the Bankruptcy Code.

6. <u>Indemnification</u>.  Debtor shall indemnify and hold harmless Magellan USA as applicable.   None of such indemnification obligations shall be dischargeable or deemed unenforceable against a liquidating trust established, under a plan of reorganization proposed by Debtor, without Magellan USA's prior written consent.

7. <u>No Marshaling</u>.  Magellan USA shall not be subject to the doctrine of marshaling. The DIP Collateral will not be subject to the doctrine of marshaling.

8. <u>Maintenance, Insurance; Government Charges</u>.  Except as otherwise provided herein, the Debtor shall maintain the DIP Collateral and ensure the proper maintenance of the DIP Collateral, including, as necessary, through incurrence and payment of expenses set forth in the First Day Motions and in the ordinary course.  The Debtor, at its expense, shall (a) continue to at all times keep the DIP Collateral fully insured against all loss, peril and hazard, and (b) pay any and all post-petition taxes, assessments and governmental charges with respect to the DIP Collateral, whether or not the Debtor is obligated to do so under the DIP Documents, and will provide Lenders with proof thereof upon written demand and will give Lenders access to its records in this regard.  Lenders will be listed as a lender loss payee or additional insured (as applicable) on all such insurance.

9. <u>Modification of Automatic Stay</u>.  The automatic stay provisions of section 362 of the Bankruptcy Code are hereby modified to the Debtor to create, and Magellan USA to perfect, any and all liens and security interests granted to Magellan USA hereunder; provided, however,

that Lenders shall not be required to file UCC financing statements or other instruments with any other filing authority to perfect any lien or security interest granted by this Interim Order or take any other action to perfect such liens and security interests, and such liens and security interests are hereby deemed properly perfected; provided however, that if any Lender shall, in its sole discretion, elect for any reason to file, record or serve any financing statements or other document with respect to such liens and security interests, the Debtor shall execute the same upon request and the filing, recording or service thereof (as the case may be) shall be deemed to have been made at the time and on the date required to implement the priority of such liens and security interests as provided in this Interim Order.

10.     Events of Default.

(a)     Entry of an Interim or Final Order in form and substance that is not acceptable to the Lender in its sole discretion.

(b)     The Chapter 11 Case shall be converted to a case under Chapter 7 of the Bankruptcy Code or be dismissed, or a motion requesting such relief shall have been filed by any party.

(c)     Filing or support of a proposed plan of reorganization by Debtor that does not provide for the indefeasible payment in full of the DIP Obligations and the Pre-Petition Obligations (to the extent secured by the DIP Liens pursuant to the Roll-Up), unless otherwise agreed in writing by Lender in its sole discretion.

(d)     Entry of an order confirming (or the filing of any motion or pleading requesting confirmation of) a plan of reorganization that does not require the indefeasible repayment in full of the DIP Obligations and the Pre-Petition Obligations (to the extent secured by

10

the DIP Liens pursuant to the Roll-Up) as of the effective date of the plan, unless otherwise agreed in writing by the Lender in its sole discretion.

(e)     Appointment of a trustee under Section 1104 of the Bankruptcy Code without the express written consent of the Lender, or the filing of any motion or other pleading requesting such relief which the Debtor fails to timely oppose.

(f)     Entry of an order by the Bankruptcy Court staying or vacating the DIP Facility, the Interim Order or Final Order approving the DIP Facility, without the prior written consent of the Lender or the filing of a motion or other pleading requesting such relief which the Debtor fails to timely oppose.

(g)     Any attempt by Debtor to obtain, or if any other party in interest obtains, an order of the Bankruptcy Court or other judgment, and the effect of such order or judgment is to, invalidate, reduce or otherwise impair the Lender's claims, or to subject any of the Lender's collateral to a surcharge pursuant to section 506(c) of the Bankruptcy Code.

(h)     A final order is entered granting any creditor with a claim in excess of $1,000,000 relief from the automatic stay or the right to retain or withhold from payment to the Debtor any asset or collection of assets having a value in excess of $1,000,000.

(i)     Failure to make all payments under the DIP Facility when due.

(j)     Any breach in any material respect of any covenant or obligation set forth in the DIP Facility or any Interim Order or Final Order.

(k)     The Debtor shall take (or support any other Person in taking) any action in order to restrict or prohibit the Lender from submitting a "credit bid" for any assets of the Debtor.

11

(l)      The Debtor fails to disburse any sale proceeds to the Lender, in accordance with the priority of proceeds set forth herein, contemporaneously with the closing of a sale of substantially all of their assets, subject to payment of the Carve Out.

(m)      The commencement of any suit by any Person that is not subject to the automatic stay against the Lender that would, or seek to, in any way reduce, set off, or subordinate the Obligations or DIP Liens.

(n)      The Debtor shall be denied, or otherwise not obtain or lose authorization to, use cash collateral as that term is used in section 363 of the Bankruptcy Code.

(o)      Any Person is granted (or awarded) an administrative expense claim in excess of $250,000 that is not subordinated to the super-priority administrative claims granted to the Lender.

(p)      The Debtor seeks to grant a security interest in or lien on any of its assets other than the DIP Liens.

(q)      The payment of or application by the Debtor for authority to pay any prepetition claim or other amount without the prior written consent of the Lender other than amounts set forth in the Budget (subject to any Permitted Variance, as defined in the DIP Term Sheet).

(r)      The failure to comply with the Budget (subject to any Permitted Variance, as defined in the Term sheet).

11.      No Limitation on Lenders.  Nothing contained herein shall be construed as a waiver of any rights, remedies, claims or objections that Lenders may have under the DIP Documents, the Bankruptcy Code, or applicable law, including any Lender's right to object to the entry of the Final Order or any further interim order on any ground or to seek modification of this Interim Order.

12.     Good Faith.  Pursuant to, and to the extent of, the provisions of section 364(e) of the Bankruptcy Code, the validity and priority of the liens and security interests authorized or granted by this Interim Order shall be binding on the Debtor, its estate and their successors and assigns even if this Interim Order is reversed or modified on appeal.

13.     Additional Documents.  The Debtor is hereby authorized to do and perform all acts and to make, execute and deliver all instruments and documents which may be required or necessary for the performance of its obligations hereunder.

14.     Immediate Effect.  As permitted by Bankruptcy Rule 6004(h), the Court hereby orders that this Interim Order shall become effective immediately.

15.     Survival After Confirmation, Conversion or Dismissal.  The provisions of this Interim Order and any actions taken pursuant thereto shall survive entry of any orders which may be entered confirming any plan of reorganization or which may be entered converting this Chapter 11 Case from chapter 11 to chapter 7 of the Bankruptcy Code; provided, further, that the terms and provisions of this Interim Order, as well as the liens and security interests granted hereunder, shall continue in this Chapter 11 Case or any successor case and such liens and security interests and the Prepetition Lender 507(b) Claim shall maintain their priority as provided by this Interim Order.

16.     No Limitation or Modification of Order.  Nothing in this Interim Order shall limit any Lender's right to seek modification of this Interim Order.

17.     No Prejudice of Rights Against Third Parties.  Nothing in this Interim Order shall in any way prejudice or compromise any rights that any Lender may have against parties other than the Debtor, and any third party documents will remain in full force and effect with the same validity as existed immediately prior to the Petition Date.

18. <u>Effect on Third Parties</u>.  The provisions of this Interim Order shall be binding on all third parties provided that any other secured party may seek adequate protection for its interests in any assets of the Debtor, if any, which adequate protection shall not contradict or otherwise interfere with the terms of this Interim Order.

19. <u>Service of the Order</u>.  Within three (3) Business Days after the entry of this Interim Order, the Debtor shall serve a copy on (a) the Southern District of Ohio Office of the U.S. Trustee; (b) counsel to any Committee, if any; (c) the creditors holding the 20 largest unsecured claims against the Debtor's estate; and (d) all secured creditors and any counsel thereto, if any.

20. <u>Controlling Effect</u>.  To the extent that any provision of this Interim Order conflicts with any provision of any of the DIP Documents, this Interim Order is deemed to control and shall supersede the conflicting provision(s). Except as modified herein and subject to the other provisions of this Order and the Bankruptcy Code, the DIP Documents shall remain in full force and effect and the obligations of Debtor to provide financial information to lenders and to maintain its property.  Without limiting the obligations of the Debtor or the rights of Magellan USA under the DIP Documents, the Debtor agrees that Magellan USA and its representatives, investment advisors, professionals, consultants or designees may at any time and with reasonable notice to the Debtor, at the sole cost and expense of the Debtor, have access to (a) any of the premises that the Debtor directly or indirectly owns, leases or otherwise has a right to occupy or use, (b) all assets and properties of Debtor located on any such premises, including, without limitation, all books and records related to accounts or inventory or any other DIP Collateral and (c) any employee, officer, director, representative and consultant of the Debtor and any other Person employed or retained by the Debtor except to the extent access to information in such Person's possession would compromise the Debtor's attorney-client privilege.

21.     The Final Hearing to consider the relief requested in the Motion shall be held on

_____, 2026 at _____ (Eastern Time) and any objections or responses to the Motion shall be

filed and served so as to be actually received on or prior to _____, 2026 at 4:00 p.m. (Eastern

Time), and served on the following parties: (a) proposed counsel to the Debtor, Manatt, Phelps &

Phillips, LLP, 7 Times Square Tower, New York, New York 10036 (Attn: Schuyler G. Carroll,

Esq.), scarroll@manatt.com, and FBT Gibbons LLP, 301 East Fourth Street, Suite 3300,

Cincinnati, Ohio 45202, (Attn: Ronald E. Gold), rgold@fbtgibbons.com; (b) counsel to Magellan

USA, Inc., Thompson Hine LLP, 312 Walnut Street, Suite 2000, Cincinnati, Ohio 45202 (Attn:

Louis Solimine), Louis.Solimine@ThompsonHine.com; (c) the Southern District of Ohio Office

of the United States Trustee; and (c) counsel to any statutory committees appointed in this Chapter

11 Case. At that further hearing or by agreed order, the Court may modify the provisions of this

Order as provided for herein. **PARTIES ARE HEREBY PUT ON NOTICE THAT LENDERS**

**MAY SEEK ADDITIONAL PROTECTIONS IN THE FINAL ORDER.**  In the event this

Interim Order is extended, all of the provisions hereof shall remain in full force and effect, except

to the extent otherwise provided for in an order of the Court extending this Interim Order.

SO ORDERED.

Copies to Default List.

15

**EXHIBIT 1**

**(Proposed Budget)**

# Magellan Aerospace, Middletown Inc.

Cash Flow Projection (000's)

| Week #<br>Week Ending | 1<br>07/24/26 | 2<br>07/31/26 | 3<br>08/07/26 | 4<br>08/14/26 | 5<br>08/21/26 | 6<br>08/28/26 | 7<br>09/04/26 | 8<br>09/11/26 | 9<br>09/18/26 | 10<br>09/25/26 | 11<br>10/02/26 | 12<br>10/09/26 | 13<br>10/16/26 | 13-Week<br>Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **RECEIPTS** | | | | | | | | | | | | | | |
| RECEIPTS | $ 941 | $ 864 | $ 519 | $ 519 | $ 672 | $ 963 | $ 1,007 | $ 488 | $ 975 | $ 860 | $ 1,028 | $ 529 | $ 1,120 | $ 10,485 |
| DIP FINANCING | - | 2,000 | - | - | 6,000 | - | - | - | - | - | - | - | - | 8,000 |
| **TOTAL - RECEIPTS** | **$ 941** | **$ 2,864** | **$ 519** | **$ 519** | **$ 6,672** | **$ 963** | **$ 1,007** | **$ 488** | **$ 975** | **$ 860** | **$ 1,028** | **$ 529** | **$ 1,120** | **$ 18,485** |
| | | | | | | | | | | | | | | |
| **OPERATING EXPENSES:** | | | | | | | | | | | | | | |
| COGS & ADMINISTRATIVE EXPENSES | $ 257 | $ 311 | $ 181 | $ 181 | $ 181 | $ 181 | $ 589 | $ 213 | $ 213 | $ 213 | $ 490 | $ 119 | $ 174 | $ 3,302 |
| PAYROLL & BENEFITS | 336 | 53 | 364 | 113 | 336 | 113 | 355 | 113 | 336 | 113 | 508 | 113 | 336 | 3,189 |
| CAPEX | - | - | - | - | - | 242 | - | - | 144 | - | - | - | - | 386 |
| TAXES | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| ENVIRONMENTAL | 113 | 113 | 164 | 164 | 164 | 164 | 487 | 487 | 487 | 487 | 487 | 504 | 504 | 4,323 |
| CORPORATE OVERHEAD | - | - | - | - | 26 | - | - | - | 26 | - | - | - | 26 | 78 |
| INTERCO | - | - | - | - | 228 | - | - | - | 157 | - | - | - | 289 | 674 |
| CONTINGENCY | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 65 |
| **TOTAL - OPEX** | **$ 711** | **$ 482** | **$ 714** | **$ 463** | **$ 940** | **$ 704** | **$ 1,436** | **$ 818** | **$ 1,368** | **$ 818** | **$ 1,490** | **$ 741** | **$ 1,334** | **$ 12,017** |
| | | | | | | | | | | | | | | |
| **RESTRUCTURING DISBURSEMENTS:** | | | | | | | | | | | | | | |
| LEAD COUNSEL | - | - | - | - | 450 | - | - | - | - | 450 | - | - | - | $ 900 |
| LOCAL COUNSEL | - | - | - | - | 100 | - | - | - | - | 100 | - | - | - | 200 |
| FINANCIAL ADVISOR | - | - | - | - | 125 | - | - | - | - | 125 | - | - | - | 250 |
| CLAIMS AGENT | 25 | - | - | - | 50 | - | - | - | - | 50 | - | - | - | 125 |
| DIP FEES/INTEREST | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| DIP LENDER COUNSEL FEES | 25 | - | - | - | 50 | - | - | - | - | - | - | - | - | 75 |
| SALE AGENT | - | - | - | - | 50 | - | - | - | - | 50 | - | - | - | 100 |
| INDEPENDENT DIRECTOR | 10 | - | - | - | 10 | - | - | - | - | 10 | - | - | - | 30 |
| UCC PROFESSIONALS | - | - | - | - | 100 | - | - | - | - | 100 | - | - | - | 200 |
| CRITICAL VENDOR(S) | - | 784 | 455 | 202 | 44 | 131 | 3 | 55 | 66 | 1 | 35 | 4 | - | 1,779 |
| UTILITIES | - | - | 60 | - | - | - | - | - | - | - | - | - | - | 60 |
| UST FEES | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| D&O INSURANCE | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| WIND-DOWN | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **TOTAL - RESTRUCTURING DISBURSEMENTS** | **$ 60** | **$ 784** | **$ 515** | **$ 202** | **$ 979** | **$ 131** | **$ 3** | **$ 55** | **$ 66** | **$ 886** | **$ 35** | **$ 4** | **$ -** | **$ 3,720** |
| **GRAND TOTAL - DISBURSEMENTS** | **$ 771** | **$ 1,265** | **$ 1,229** | **$ 665** | **$ 1,919** | **$ 835** | **$ 1,439** | **$ 873** | **$ 1,434** | **$ 1,704** | **$ 1,525** | **$ 745** | **$ 1,334** | **$ 15,737** |
| | | | | | | | | | | | | | | |
| **BEGINNING CASH** | **$ -** | **$ 170** | **$ 1,768** | **$ 1,059** | **$ 913** | **$ 5,667** | **$ 5,794** | **$ 5,362** | **$ 4,977** | **$ 4,518** | **$ 3,675** | **$ 3,179** | **$ 2,962** | **$ -** |
| RECEIPTS | 941 | 864 | 519 | 519 | 672 | 963 | 1,007 | 488 | 975 | 860 | 1,028 | 529 | 1,120 | 10,485 |
| DIP FINANCING | - | 2,000 | - | - | 6,000 | - | - | - | - | - | - | - | - | 8,000 |
| OPEX | (711) | (482) | (714) | (463) | (940) | (704) | (1,436) | (818) | (1,368) | (818) | (1,490) | (741) | (1,334) | (12,017) |
| RESTRUCTURING DISBURSEMENTS | (60) | (784) | (515) | (202) | (979) | (131) | (3) | (55) | (66) | (886) | (35) | (4) | - | (3,720) |
| **ENDING CASH** | **$ 170** | **$ 1,768** | **$ 1,059** | **$ 913** | **$ 5,667** | **$ 5,794** | **$ 5,362** | **$ 4,977** | **$ 4,518** | **$ 3,675** | **$ 3,179** | **$ 2,962** | **$ 2,748** | **$ 2,748** |

**EXHIBIT B**

**(DIP Term Sheet)**

**FINANCING FOR  MAGELLAN AEROSPACE, MIDDLETOWN, INC.**

| | |
|---|---|
| **Borrower:** | Magellan Aerospace, Middletown, Inc. (the **"Debtor"**). |
| **Amount and Type of Facility:** | Cash Collateral Usage: The Debtor believes that no person or entity has a lien on its cash, but to the extent any person or entity has a validly perfected pre-petition lien, the Debtor anticipates continuing to use cash collateral. |

DIP Facility: Notwithstanding the foregoing, because the use of cash collateral alone is expected to be insufficient to meet the Debtor's immediate post-petition liquidity needs, the DIP Lender (as defined below) shall make available to the Debtor, as applicable, a revolving credit facility in the aggregate principal amount of $20,000,000 (the "**DIP Facility**"), of which $2,000,000 will be made available upon the entry of the Interim Order with the balance to be made available upon entry of the Final Order, in each case consistent with and to the extent required under the Budget. As additional consideration for the DIP Facility, and subject to entry of the Interim Order and the Final Order, Pre-Petition Obligations in an amount equal to the Roll-Up Amount shall be secured by the DIP Liens and entitled to the DIP Superpriority Claims as set forth in the Collateral Security section below.

The Debtor will be liable for all loans, advances, debts, liabilities and obligations, for the performance of covenants, tasks or duties or for payment of monetary amounts (whether or not such performance is then required or contingent, or such amounts are liquidated or determinable), owing by Debtor to DIP Lender, and all covenants and duties regarding such amounts, of any kind or nature, present or future, whether or not evidenced by any note, agreement or other instrument, arising under the DIP Facility, including all principal, interest (including all interest that accrues after the Petition Date, whether or not allowed in such case or proceeding), fees, charges, expenses, attorneys' fees and any other sum chargeable to the Debtor under the DIP Facility (the **"Obligations"**).

| | |
|---|---|
| **DIP Lender:** | Magellan Aerospace USA, Inc  (the "**DIP Lender**"). |
| **Borrowing Availability:** | All advances under the DIP Facility (collectively, the "**DIP Loans**") shall be available to the Debtor upon one (1) Business Day's prior written notice by the Debtor to the DIP Lender, unless the Termination Date shall have occurred before any such  date.  Upon the service of such a written notice, the Debtor will pay all accrued and unpaid interest outstanding under the DIP Loans at the time of such notice of borrowing. |

1

**Error! Unknown document property name.**

| | |
|---|---|
| **DIP Loan Documentation** | At the option of the DIP Lender, the Debtor shall execute definitive financing documentation with respect to the DIP Facility, including, without limitation, a credit agreement, a promissory note, guarantees and security documents, in each case, satisfactory in form and substance to the DIP Lender ("**Additional DIP Documents**" and together with this Term Sheet, the "**DIP Loan Documentation**"). Any such Additional DIP Documents shall, upon execution, supersede the provisions of this Term Sheet; provided that if the DIP Lender determines not to require the Debtor to execute any Additional DIP Documents, the provisions of this Term Sheet and the Interim Order and the Final Order shall govern the DIP Facility. The provisions of the Additional DIP Documents shall be consistent with this Term Sheet and the Interim Order and the Final Order. |
| **Fees:** | No origination, prepayment or exit fees. |
| | Debtor agrees to pay the costs and expenses of the DIP Lender as set forth in the Section titled "Fees and Expenses" below. |
| **Termination Date:** | The earliest to occur of: (a) fifteen (15) days after the Petition Date if the Interim Order has not been entered, (b) forty (40) days after the Petition Date if the Final Order has not been entered; (c) the occurrence and continuance of any Event of Default (as defined below) beyond the expiration of any applicable cure or grace period; (d) the effective date of a confirmed plan of reorganization or liquidation, which plan shall provide for indefeasible payment in full of all Obligations (including the Pre-Petition Obligations to the extent of the Roll-Up Amount) or is otherwise acceptable to DIP Lender in its reasonable discretion; (e) the date which is the closing date of any 363 Sale; and (f) 180 days from the Petition Date. The date on which the earliest of clauses (a) through (f) above occurs is referred to hereinafter as the "**Termination Date**." Upon the occurrence of the Termination Date, the DIP Facility shall be deemed terminated, and the DIP Lender shall have no further obligation to provide financing, all DIP Obligations and Pre-Petition Obligations (to the extent of the Roll-Up Amount) shall immediately become due and payable to the DIP Lender; and the DIP Lender shall have the right to enforce its rights under this Term Sheet and applicable law in respect of the DIP Obligations, the Pre-Petition Obligations, and the DIP Collateral; provided, |

2

**Error! Unknown document property name.**

|  |  |
|---|---|
| | however that nothing in this term sheet shall limit the Debtor's ability to seek to use cash collateral on a non-consensual basis and/or challenge whether a Termination Date has occurred. |
| **Non-Default Interest Rate and Payment Terms:** | Interest on the DIP Facility shall accrue from and after the Petition Date at a per annum rate of SOFR, plus 1.5% percent (the **"Non-Default Interest Rate"**).  All accrued and unpaid interest shall be payable to the DIP Lender on the last Business Day of each month until all Obligations owed to the DIP Lender are paid in full, provided that the Debtor shall pay all accrued and unpaid interest prior to or in connection with a notice of borrowing.  All computations of interest payable hereunder shall be calculated on the basis of a year of 365 days (or 366 days in a leap year), and in each case shall be payable for the actual number of days elapsed (including the first day but excluding the last day). |
| **Default Interest Rate:** | Effective immediately upon the occurrence of the Termination Date, interest on all outstanding Obligations shall accrue at a rate that is 2% per annum in excess of the Non-Default Interest Rate (the "**Default Interest Rate**"). |
| **Loan Payments:** | All unpaid principal, interest, fees, costs and expenses on the DIP Facility shall be immediately due and payable in full by the Debtor on the Termination Date, whether at maturity, upon acceleration or otherwise. |
| **Use of Proceeds:** | Proceeds of the DIP Facility shall be used solely for the following purposes, in each case consistent with the Budget: (a) to fund, after application of all other available cash, post-petition operating expenses and working capital needs of the Debtor, including, but not limited to, those activities required to remain in, or return to, compliance with laws in accordance with 28 U.S.C. § 1930; (b) to pay fees and expenses to the DIP Lender in accordance with this term sheet; (c) to fund the Carve Out Account; (d) to pay fees and expenses of professionals engaged by or for the benefit of the Debtor or the DIP Lender (collectively, "**Professional Fees**"; it being acknowledged and agreed by the DIP Lender that all such Professional Fees are being paid from its collateral, and thus, such payments shall still be made notwithstanding the conversion or dismissal of the bankruptcy case); and (e) to pay certain other costs and expenses of administration of the Chapter 11 Case in the ordinary course of business (or outside the ordinary course of business, provided that the DIP Lender consents thereto in writing (with such consent not to be unreasonably withheld or delayed)).

Proceeds of the DIP Facility or cash collateral, including without limitation the proceeds of the Carve Out, shall not be used by |

3

any party including any official committee of unsecured creditors (a) to permit the Debtor, or any other party-in-interest or their representatives to challenge or otherwise contest or institute any proceeding to determine the validity, perfection or priority of security interests in favor of the DIP Lender or any affiliate of the DIP Lender, (b) to commence, prosecute or defend any claim, motion, proceeding or cause of action against the DIP Lender or any of its affiliates, and each of their respective agents, attorneys, advisors or representatives including, without limitation, any lender liability claims or subordination claims, (c) to commence, prosecute or defend any claim or proceeding or cause of action to disallow or challenge the obligations of the Debtor under the DIP Loan Documentation, or (d) to fund acquisitions, capital expenditures, capital leases, or any other similar expenditure.

| | |
|---|---|
| **Cash Management Collections and Remittances:** | Debtor shall use a cash management system that is the same as or substantially similar to its pre-petition cash management system. Any material changes from such pre-petition cash management system must be acceptable to the DIP Lender in its commercially reasonable discretion. The Interim Order and Final Order shall provide the DIP Lender with a valid and enforceable lien and security interest on the cash held in the Debtor's bank accounts. |
| **Super-Priority Administrative Claim:** | Amounts owed by the Debtor to the DIP Lender pursuant to the DIP Facility and the Roll-Up Amount (including all accrued interest, fees, costs and expenses) shall constitute, in accordance with Section 364(c)(1) of the Bankruptcy Code (the "**DIP Superpriority Claims**"), a claim having priority over any or all administrative expenses of the kind specified in, among other sections, Sections 105, 326, 330, 331, 503(b), 506(c), 507(a), 507(b) and 726 of the Bankruptcy Code other than the Prepetition Permitted Liens and Pre-Petition Lender Adequate Protection Claims, which shall be senior in priority to the DIP Superpriority Claim, and in all cases subject and subordinate to payment of the Carve Out. The foregoing super-priority claim in favor of the DIP Lender shall not be payable from any claims or causes of action arising under chapter 5 of the Bankruptcy Code or any applicable state fraudulent transfer statutes (together, **"Avoidance Actions"**) or any proceeds thereof. |
| **Collateral Security:** | On the Petition Date, in order to secure the DIP Obligations and the Pre-Petition Obligations (to the extent of the Roll-Up Amount), the DIP Lender is hereby granted pursuant to and in accordance with Section 364(c)(2), 364(c)(3) and 364(d)(1) of the Bankruptcy Code, valid enforceable and fully-perfected security interests in and liens on (the "**DIP Liens**") the DIP |

4

**Error! Unknown document property name.**

Collateral.

"**DIP Collateral**" means all property of the estate under section 541 of the Bankruptcy Code, including all real and personal property, whether now existing or hereafter arising and wherever located, tangible and intangible, of each of the Debtor, including: (a) all cash, cash equivalents, deposit accounts, securities accounts, accounts, other receivables (including credit card receivables), chattel paper, contract rights, inventory (wherever located), instruments, documents, securities (whether or not marketable) and investment property (including all of the issued and outstanding capital stock of each of any subsidiaries), hedge agreements, real estate, furniture, fixtures, equipment (including documents of title), goods, franchise rights, trade names, trademarks, servicemarks, copyrights, patents, license rights, intellectual property, general intangibles (including, for the avoidance of doubt, payment intangibles), rights to the payment of money (including tax refunds and any other extraordinary payments), supporting obligations, guarantees, letter of credit rights, commercial tort claims, causes of action, and all substitutions, indemnification rights, all present and future intercompany debt, books and records related to the foregoing, accessions and proceeds of the foregoing, wherever located, including insurance or other proceeds; (b) subject to entry of a Final Order providing for such relief, all avoidance actions brought pursuant to Chapter 5 of the Bankruptcy Code or applicable state law equivalents, together with any proceeds thereof; (c) proceeds from the Debtor's exercise of rights under section 506(c) and 550 of the Bankruptcy Code; (d) all property of the Debtor that was not otherwise subject to valid, perfected, enforceable and unavoidable liens on the Petition Date, and (e) all proceeds from the sale, assignment, or other disposition of (x) any leased real property and (y) the Debtor's right to select, identify, and designate which commercial leases may be assumed and assigned under section 365 of the Bankruptcy Code.

The DIP Liens shall be subject only to validly perfected, enforceable and non-avoidable liens existing as of the Petition Date (the "Prepetition Permitted Liens").

| | |
|---|---|
| **Roll-Up Not Effective Until Final Order:** | As consideration for the DIP Lender's agreement to provide the DIP Facility, and subject to and upon entry of the Final Order, an amount of Pre-Petition Obligations equal to the Roll-Up Amount (calculated as of the applicable date of determination) shall be deemed to be secured by the DIP Liens and entitled to the benefit of the DIP Superpriority Claims, pari passu with the |

5

**Error! Unknown document property name.**

|  | DIP Obligations arising under the DIP Facility. |
|--|--|
|  | Roll-Up shall be subject to any limitations or modifications ordered by the Bankruptcy Court. |
| **Lien Validation and Perfection:** | All liens authorized and granted pursuant to the Interim Order or the Final Order entered by the Bankruptcy Court approving the DIP Facility or with respect to adequate protection, including without limitation the DIP Liens, shall be deemed effective and perfected as of the Petition Date, and no further filing, notice or act will be required to effect such perfection; provided that the DIP Lender may file any financing statements or other filings to memorialize the DIP Liens as the DIP Lender may desire, and the Debtor shall cooperate with the DIP Lender in connection with any such filings. |
| **Release of Claims:** | Subject to and upon entry of the Final Order, in consideration of the furnishing of the DIP Facility, the Debtor, on behalf of itself and its estate and all claiming through the Debtor or its estate, subject to the entry of the Final Order, hereby absolutely releases and forever discharge solely the DIP Lender, together with its members, managers, officers and directors, from any and all claims and causes of action of every kind and nature arising from or related to the DIP Financing in any manner that the Debtor may hold against such party.  For the avoidance of doubt, this release shall not release any person or entity from claims that do not arise from or relate to the DIP Financing in any manner. |
| **Section 506(c), 552(b) "Equities of the Case", and Marshalling Waivers:** | The DIP Lender shall not be subject to the equitable doctrine of "marshalling" or any other similar doctrine with respect to any of the DIP Collateral.  The Final Order shall provide for a waiver of the ability to surcharge under section 506(c) or 105(a) of the Bankruptcy Code or any other applicable law.  There will be no 552(b) waiver. |

6

**Error! Unknown document property name.**

| | |
|---|---|
| **Adequate Protection:** | As adequate protection for the use of its cash collateral and in consideration for being primed in part by the DIP Lender's claims and liens, to the extent any Pre-Petition Lender exists it (a) shall receive a claim having priority over any and all expenses of the kind specified in, among other sections of the Bankruptcy Code, Sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 726, and 1114, subject to payment of the Carve Out and subject to the super-priority administrative claims of the DIP Lender under the DIP Facility and existing claims of the Pre-Petition Lender on its pre-petition collateral; and (b) shall have valid, binding, enforceable and perfected replacement liens in all DIP Collateral, subject to payment of the Carve Out and any prepetition liens, in each case equal to the sum of the aggregate diminution, if any, subsequent to the Petition Date, in the value of its pre-petition collateral resulting from the sale, use, lease or disposition of such pre-petition collateral during the Chapter 11 Case (the **"Pre-Petition Lender Adequate Protection Liens"**). |
| **DIP Lender's Fees and Expenses:** | The Debtor shall reimburse the DIP Lender for all reasonable and documented costs and expenses, including legal fees, financial advisor fees, and other similar fees, costs and expenses incurred in connection with the DIP Facility and the Debtor's chapter 11 case, whether incurred on a prepetition or postpetition basis, which shall be payable by the Debtor promptly upon written demand (but in no event more than 10 business days from the date of such demand) and without the requirement for Bankruptcy Court approval, regardless of whether such fees are provided for in the Budget.  Failure to pay such fees and expenses within ten business days of delivery of the applicable invoice shall be an Event of Default under the DIP Facility. |
| **Conditions Precedent to Interim Draw:** | The closing of the DIP Facility and the funding of the initial draw thereunder shall be conditioned on the satisfaction of the following conditions precedent unless waived by the DIP Lender in its sole discretion:<br><br>(a) entry of an Interim Order approving the DIP Facility, the DIP Liens and super-priority administrative claims (subject to the Carve Out) and other liens securing the DIP Facility, and containing such other orders and findings as the DIP Lender may require, including automatic modification of the automatic stay upon the occurrence of an Event of Default hereunder that, upon at least five (5) days' notice to the Debtor, the United States Trustee, and any Committee, results in the DIP Lender exercising certain rights and remedies against the DIP Collateral, which Interim Order shall not have been modified or amended without the approval of the DIP Lender, and shall not |

7

**Error! Unknown document property name.**

have been reversed, vacated or stayed pending appeal, in form and substance satisfactory to the DIP Lender in its sole discretion;

(b) continuation of Debtor's present cash management system;

(c) there shall be in place a Budget approved by the DIP Lender;

(d) the Debtor shall have not failed to disclose any material assumptions with respect to such Budget;

(e) the Debtor shall have delivered to the DIP Lender a notice of borrowing in connection with such interim draw no later than 11:00 a.m. ET one business day prior to the requested funding date for such interim draw (or such later time as the DIP Lender may agree in its sole discretion);

(f) such interim draw shall be in a maximum amount not to exceed the forecasted amount of cash required to comply with the Budget for the applicable borrowing period;

(g) all of the "first day" motions filed in the Debtor's chapter 11 case and all other pleadings which relate to the DIP Facility shall have been reviewed in advance by the DIP Lender and shall be in form and substance reasonably satisfactory to the DIP Lender;

(h) the Debtor shall have insurance (including, without limitation, commercial general liability and property insurance) with respect to the DIP Collateral in such amounts and scope as is reasonably acceptable to the DIP Lender;

(i) each of the representations and warranties contained in this term sheet shall be true and correct as of the date of such draw; and

(j) upon entry of the Interim Order, the entry into this Term Sheet shall not violate any requirement of law and shall not be enjoined, temporarily, preliminarily, or permanently.

| **Conditions Precedent to Subsequent Draws:** | The funding of each subsequent draw under the DIP Facility thereunder shall be conditioned on the satisfaction of the following conditions precedent unless waived by the DIP Lender in its sole discretion: |
| --- | --- |

(a) entry of a Final Order approving the DIP Facility, the DIP Liens (including the securing of Pre-Petition Obligations to the extent of the Roll-Up Amount), and super-priority administrative claims (subject to the Carve Out) and other liens securing the DIP Facility, and containing such other orders and findings as the DIP Lender may require, including automatic modification of the automatic stay upon the occurrence of an Event of Default hereunder that, upon at least five (5) days' notice to the Debtor, the United States Trustee, and any

**Error! Unknown document property name.**

Committee, results in the DIP Lender exercising certain rights and remedies against the DIP Collateral, which Final Order shall not have been modified or amended without the approval of the DIP Lender, and shall not have been reversed, vacated or stayed pending appeal, in form and substance satisfactory to the DIP Lender in its sole discretion;

(b) continuation of Debtor's present cash management system;

(c) there shall be in place a Budget approved by the DIP Lender;

(d) the Debtor shall have not failed to disclose any material assumptions with respect to such Budget;

(e) the Debtor shall have delivered to the DIP Lender a notice of borrowing in connection with such interim draw no later than 11:00 a.m. ET one business day prior to the requested funding date for such interim draw (or such later time as the DIP Lender may agree in its sole discretion);

(f) such interim draw shall be in a maximum amount not to exceed the forecasted amount of cash required to comply with the Budget for the applicable borrowing period;

(g) the Final Order shall have been entered by the Bankruptcy Court and not have been reversed, modified, amended, stayed, vacated or subject to a stay pending appeal, in whole or in part, in each case without the prior written consent of the DIP Lender, and the Debtor shall be in compliance in all respects with this Term Sheet and the Interim Order;

(h) the Debtor shall have insurance (including, without limitation, commercial general liability and property insurance) with respect to the DIP Collateral in such amounts and scope as is reasonably acceptable to the DIP Lender;

(i) each of the representations and warranties contained in this term sheet shall be true and correct as of the date of such draw;

(j) the entry into and performance under this Term Sheet shall not violate any requirement of law and shall not be enjoined, temporarily, preliminarily, or permanently; and

(k) all interest, fees and expenses owing to the DIP Lender in connection with the DIP Facility have been paid.

| **Affirmative and Negative Covenants:** | None. |
| **Representations and Warranties:** | None. |
| **Additional Conditions to** | There shall exist no default (or event that would constitute a |

9

**Error! Unknown document property name.**

| | |
|---|---|
| **Each Borrowing Under the Facility:** | default with the giving of notice or lapse of time) hereunder, and the representations and warranties herein shall be true and correct in all material respects. |
| | There shall have occurred no material adverse change in the Debtor's (financial, environmental, or otherwise) operations, performance, or properties (other than, in each case, the commencement and continuation of the Chapter 11 Case), since the date of this term sheet, that in the reasonable judgment of the DIP Lender, has or can reasonably be expected to have a material adverse effect on the rights and remedies of the DIP Lender or on the ability of the Debtor to perform its obligations to them under the DIP Facility. |
| **Remedies:** | Following the Termination Date and provided that the Bankruptcy Court does not enter any order to the contrary within the notice periods provided herein and in the Interim Order and the Final Order, as applicable, the DIP Lender shall have customary remedies, including, without limitation, the right to realize on all DIP Collateral (which secures both the DIP Obligations and the Pre-Petition Obligations to the extent of the Roll-Up Amount), the right to exercise any remedy available under applicable law, without the necessity of obtaining any further relief or order from the Bankruptcy Court. Consistent with the foregoing sentence, section 362 relief from the stay in favor of the DIP Lender shall be embodied in any order approving the DIP Facility and the use of cash collateral. |
| **Events of Default:** | • Entry of an Interim or Final Order in form and substance that is not acceptable to the DIP Lender in its reasonable discretion. |
| | • The Chapter 11 Case shall be converted to a case under Chapter 7 of the Bankruptcy Code or be dismissed, or a motion requesting such relief shall have been filed by any party. |
| | • Filing or support of a proposed plan of reorganization by Debtor that does not provide for the indefeasible payment in full of the DIP Obligations and the Pre-Petition Obligations (to the extent secured by the DIP Liens pursuant to the Roll-Up), unless otherwise agreed in writing by DIP Lender in its sole discretion. |
| | • Entry of an order confirming (or the filing of any motion or pleading requesting confirmation of) a plan of reorganization that does not require the indefeasible repayment in full of the DIP Obligations and the Pre- |

10

Petition Obligations (to the extent secured by the DIP Liens pursuant to the Roll-Up) as of the effective date of the plan, unless otherwise agreed in writing by the DIP Lender in its sole discretion.

- Appointment of a trustee under Section 1104 of the Bankruptcy Code without the express written consent of the DIP Lender, or the filing of any motion or other pleading requesting such relief which the Debtor fails to timely oppose.

- Entry of an order by the Bankruptcy Court staying or vacating the DIP Facility, the Interim Order or Final Order approving the DIP Facility, without the prior written consent of the DIP Lender or the filing of a motion or other pleading requesting such relief which the Debtor fails to timely oppose.

- Any attempt by Debtor to obtain, or if any other party in interest obtains, an order of the Bankruptcy Court or other judgment, and the effect of such order or judgment is to, invalidate, reduce or otherwise impair the DIP Lender's claims, or to subject any of the DIP Lender's collateral to a surcharge pursuant to Section 506(c) of the Bankruptcy Code.

- A final order is entered granting any creditor with a claim in excess of $1,000,000 relief from the automatic stay or the right to retain or withhold from payment to the Debtor any asset or collection of assets having a value in excess of $1,000,000.

- Failure to make all payments under the DIP Facility when due.

- Any breach in any material respect of any covenant or obligation set forth in the DIP Facility or any Interim Order or Final Order.

- The Debtor shall take (or support any other Person in taking) any action in order to restrict or prohibit the DIP Lender from submitting a "credit bid" for any assets of the Debtor.

- The Debtor fails to disburse any sale proceeds to the DIP Lender, in accordance with the priority of proceeds set forth

11

Error! Unknown document property name.

herein, contemporaneously with the closing of a sale of substantially all of their assets, subject to payment of the Carve Out.

- The commencement of any suit by any Person that is not subject to the automatic stay against the DIP Lender that would, or seek to, in any way reduce, set off, or subordinate the Obligations or DIP Liens.

- The Debtor shall be denied, or otherwise not obtain or lose authorization to, use cash collateral as that term is used in section 363 of the Bankruptcy Code.

- Any Person is granted (or awarded) an administrative expense claim in excess of $250,000 that is not subordinated to the super-priority administrative claims granted to the DIP Lender.

- The Debtor seeks to grant a security interest in or lien on any of its assets other than the DIP Liens.

- The payment of or application by the Debtor for authority to pay any prepetition claim or other amount without the prior written consent of the DIP Lender other than amounts set forth in the Budget (subject to any Permitted Variance).

- The failure to comply with the Budget (subject to any Permitted Variance).

| | |
|---|---|
| **Governing Law:** | All documentation in connection with the DIP Facility shall be governed by the laws of the state of Ohio, subject to applicable federal bankruptcy laws. |
| **Credit Bid:** | Subject to Section 363(k) of the Bankruptcy Code, the DIP Lender shall have the unqualified right to credit bid up to the full amount of the Obligations (including the Pre-Petition Obligations) in any sale of assets of the Debtor, without the need for further Court order authorizing the same, and whether such sale is effectuated through Section 363 or 1129 of the Bankruptcy Code, by a chapter 7 trustee under Section 725 of the Bankruptcy Code, or otherwise. |
| **Carve Out:** | The liens and claims granted to the DIP Lender and any Pre-Petition Lender in the Interim Order, the Final Order, this term sheet, and/or any related documents are all subject to the Carve Out. |

12

**Error! Unknown document property name.**

| | |
|---|---|
| **Professional Fee and U.S. Trustee Funding:** | The Debtor shall establish a separate bank account for the sole and exclusive benefit of professionals retained by order of this Court and the U.S. Trustee (the "**Carve Out Account**"). All funds in the Carve Out Account, shall be maintained in such account, subject to be used by the Debtor solely to the extent necessary to make payment of fees due to the U.S. Trustee and, with respect to professional fees and expenses, as permitted by Court order. |
| | At the end of each calendar week, the Debtor shall deposit into the Carve Out Account, the amount set forth in the Budget for all professionals and the U.S. Trustee. |
| **Other Definitions:** | "**Bankruptcy Code**" means Title 11 of the United States Code (11 U.S.C. § 101 et seq.), as amended. |
| | "**Budget**" means the weekly cash flow budget delivered by the Debtor to the DIP Lender and approved by the DIP Lender, as the same may be updated, amended or modified from time to time with the prior written consent of the DIP Lender. |
| | "**Business Day**" means any day other than a Saturday, Sunday or other day on which commercial banks in Columbus, Ohio are authorized or required by law to close. |
| | "**Bankruptcy Court**" means the United States Bankruptcy Court for the Southern District of Ohio presiding over the Chapter 11 Case. |
| | "**Carve Out**" means: |

(a) unpaid, postpetition fees and expenses of the Clerk of the Court and the U.S. Trustee pursuant to 28 U.S.C. § 1930(a) in such amount, with respect to the U.S. Trustee as agreed to by the U.S. Trustee or as determined by the Court;

(b) the unpaid postpetition fees and expenses of the professionals retained by the Debtor and by any Committee (up to a maximum of $50,000 in the case of any professionals retained by the Committee), whose retentions are approved pursuant to final orders of the Court under sections 327, 328, 363 or 1103(a) of the Bankruptcy Code (the "**Professionals**"), but only to the extent that such fees and expenses are (i) incurred prior to the giving of a notice of the occurrence of the Termination Date by the DIP Lender to the Debtor and any Committee, (ii) subsequently allowed by the Bankruptcy Court under sections 330, 331, or 363 of the Bankruptcy Code, and (iii) not otherwise paid from retainers;

13

**Error! Unknown document property name.**

(c)   Fees incurred by the Professionals (i) of the Debtor, up to $250,000 and (ii) an official committee appointed by the Court, up to $100,000, after the DIP Lender's transmission of notice of the Termination Date, to the extent such fees and expenses are (i) subsequently allowed by the Bankruptcy Court under sections 330, 331, or 363 of the Bankruptcy Code, and (ii) not otherwise paid from any retainers; provided that such notice of Termination Date is not rescinded or withdrawn; and

(d)   all reasonable fees and expenses incurred by a trustee under Section 726(b) of the Bankruptcy Code in an aggregate amount not exceeding $50,000.

"**Chapter 11 Case**" means the voluntary Chapter 11 case to be commenced by the Debtor in the Bankruptcy Court.

"**Committee**" means any statutory committee appointed in the Chapter 11 Case.

"**Contractual Obligations**" means, as applied to any Person, any indenture, mortgage, deed of trust, contract, undertaking, agreement or other instrument to which that Person is a party or by which it or any of its properties is bound or to which it or any of its properties is subject.

"**DIP Facility Documents**" means collectively this term sheet and all documents by and among the Debtor and DIP Lender relating to the DIP Facility, all of which such documents shall be in form and substance satisfactory to the DIP Lender in its sole discretion.

"**DIP Obligations**" means all Obligations arising under or in connection with the DIP Facility.

"**Final Order**" means a final, non-appealable order of the Bankruptcy Court, that, without limitation, approves the DIP Facility and grants the liens and security interests contained therein, on terms satisfactory to the DIP Lender in its sole discretion.

"**Governmental Authority**" means any nation or government, any state or other political subdivision thereof, and any agency, department or other entity exercising executive, legislative, judicial, regulatory or administrative functions of or pertaining to government.

"**Interim Order**" means an interim order of the Bankruptcy Court authorizing the Debtor, among other things, to obtain interim financing and incur post-petition indebtedness on terms

14

**Error! Unknown document property name.**

satisfactory to the DIP Lender in its sole discretion.

"**Person**" means any individual, sole proprietorship, partnership, joint venture, trust, unincorporated organization, association, corporation, limited liability company, institution, public benefit corporation, other entity or government (whether federal, state, county, city, municipal, local, foreign, or otherwise, including any instrumentality, division, agency, body or department thereof).

"**Permitted Variance**" means a variance of up to 20 percent (20%) from the amounts set forth in the Budget for any applicable measurement period.

"**Petition Date**" means the date on which the Chapter 11 Case for such Debtor was filed with the Bankruptcy Court.

"**Pre-Petition Obligations**" means all loans, advances, debts, liabilities, obligations, fees, charges, expenses and other amounts owing by the Debtor to the DIP Lender, whether direct or indirect (including those acquired by assumption), absolute or contingent, due or to become due, now existing or hereafter arising, including all interest, fees and expenses that accrue after the Petition Date.

"**Requirement of Law**" means, as to any Person, the certificate of incorporation and bylaws or other organizational or governing documents of such Person, and any law, treaty, rule or regulation or determination of an arbitrator or a court or other governmental authority, in each case, applicable to or binding upon such Person or any of its property or to which such Person or any of its property is subject.

"**Roll-Up Amount**" means, as of any date of determination, an amount equal to the aggregate principal amount of DIP Loans funded under the DIP Facility multiplied by three (3).

"**Sale**" means a sale of all or substantially all of the Debtor's assets.

The Debtor and the DIP Lender consent to the nonexclusive jurisdiction and venue of the state or federal courts located in the Southern District of Ohio. Each party hereto irrevocably waives, to the fullest extent permitted by applicable law, (a) any right it may have to a trial by jury in any suit, action, claim, counterclaim or other proceeding arising out of or relating to this letter agreement or the transactions contemplated hereby (whether based on contract, tort or any other theory) or the performance of services hereunder and (b) any objection that it may now or hereafter have to the laying of venue of any such legal proceeding in the state or federal courts located in the Southern District of Ohio.

This term sheet embodies the entire agreement among the parties hereto and supersedes all prior commitments, agreements, representations, and understandings, whether oral or written, relating to the subject matter hereof, and may not be contradicted or varied by evidence of prior,

15

contemporaneous, or subsequent oral agreements or discussions of the parties hereto. All Exhibits, Schedules and Annexes referred to herein are incorporated in this term sheet by reference and constitute a part of this term sheet. This term sheet and any amendments, waivers, consents or supplements may be executed in any number of counterparts and by different parties hereto in separate counterparts, each of which when so executed and delivered shall be deemed an original, but all of which counterparts together shall constitute but one in the same instrument. This term sheet shall become effective upon the execution of a counterpart hereof by each of the parties hereto.

16

**Error! Unknown document property name.**

If the Debtor is in agreement with the foregoing, please sign this term sheet and return it to the DIP Lender by no later than close of business on July 22, 2026.  This letter shall terminate if not so accepted by you prior to that time.

Very truly yours,


MAGELLAN AEROSPACE USA, INC. as DIP Lender



By: _____
Name:
Title:



ACCEPTED AND AGREED TO:
MIDDLETOWN, INC.



By: _____
Name:
Title:

1

# **EXHIBIT C**

(Highlighted Provisions)

**CASH COLLATERAL / POSTPETITION FINANCING CHECKLIST**

The Debtor, through a separately filed motion, agreed order or stipulation, has requested the approval of cash collateral or postpetition financing or both. Attached to the motion as Exhibit B is a true and correct copy of the agreement for use of ~~cash collateral or~~ postpetition financing, which contains the following provisions:

| | Page No. | Line No. If applicable | Description of Provision |
|---|---|---|---|
| | | | (1) Cross-collateralization clauses (i.e., clauses that secure the repayment of prepetition debt with postpetition assets in which the secured lender would not otherwise have a security interest by virtue of its prepetition security agreement or applicable law.) |
| ✔ | 4-5, 15 | | (2) Roll-up clauses (i.e., clauses that provide for the use of property of the estate or the proceeds of a postpetition loan to make cash payments on prepetition debt). |
| ✔ | 4, 15-16 | | (3) Provisions or findings of fact that release, waive, or limit any claim or other cause of action belonging to the estate or the trustee, including but not limited to (4), (5), (6), and (7) below: |
| | | | (4) the release, waiver, or limitation of claims or other causes of action against any secured creditor without first giving parties in interest at least seventy-five (75) days from the entry of the interim order and the creditors' committee, if appointed, at least sixty (60) days from the date of its appointment to investigate such matters; |
| | | | (5) the release, waiver or limitation of claims or other causes of action against any secured creditor for alleged prepetition torts or breaches of contract; |
| ✔ | 4 | | (6) the waiver of avoidance actions under the Bankruptcy Code; or |
| | | | (7) any modification of the statute of limitations or other deadline to commence an action. |
| | | | (8) Provisions or findings of fact that determine the validity, enforceability, priority, or amount of a claim that arose before the commencement of the case, or of any lien securing the claim. |
| ✔ | 4-5 | | (9) Provisions that grant a lien on property of the estate that is not otherwise subject to a lien, grant a junior lien on property of the estate that is subject to a lien, or create a lien senior or equal to any existing lien without the consent of that lienholder. |
| ✔ | 7 | | (10) Provisions that release, waive or limit any right under section 506(c) of the Bankruptcy Code. |
| | | | (11) A budget that does not provide for the payment of all accrued and unpaid administrative expense claims. |
| | | | (12) Provisions that release, waive or limit any right under section 552(b) of the Bankruptcy Code. |

| | | | |
|---|---|---|---|
| ✔ | 4-5 | | (13) Provisions that grant a lien on any claim or cause of action arising under sections 544, 545, 547, 548, 549, 553(b), 723(a), or 727(a) of the Bankruptcy Code. |
| ✔ | 13-14 | | (14) Provisions that provide disparate treatment with regard to professional fee carveouts for the professionals retained by a creditors' committee from that provided for the professionals retained by the debtor. |
| | | | (15) Provisions that prime administrative expenses of the kind described in section 503(b) or 507(a) of the Bankruptcy Code. |
| | | | (16) Provisions that waive or modify any entity's authority or right to file a plan or seek an extension of time in which the debtor has the exclusive right to file a plan or otherwise operate to divest the debtor of any discretion in the administration of the estate or limit access to the court to seek any relief under other applicable provisions of law. |
| | | | (17) Provisions that establish deadlines for filing a plan of reorganization, for approval of a disclosure statement, for a hearing on confirmation, or for entry of a confirmation order. |
| ✔ | 6 | | (18) Provisions providing for the indemnification of any entity. |
| ✔ | 10 | | (19) Provisions waiving or modifying provisions of the Bankruptcy Code or applicable Rules relating to the automatic stay. |
| | | | (20) Provisions that waive or modify the applicability of nonbankruptcy law relating to the perfection of a lien on property of the estate, or on the foreclosure or other enforcement of the lien. |
| | | | (21) Provisions that waive or modify the debtor's right to move for a court order pursuant to section 363(c)(2)(B) of the Bankruptcy Code authorizing the use of cash collateral or section 364 of the Bankruptcy Code to obtain credit. |
| | | | (22) Provisions that grant a lien in an amount in excess of the dollar amount of cash collateral authorized under the applicable cash collateral order. |
| | | | (23) Findings of fact on matters extraneous to the approval process. |
| | | | (24) Provisions that bar the debtor from future bankruptcy filings. |

0165588.0827826   4919-6772-4479v3

2